**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Drinker Biddle & Reath LLP and Antonio Pozos, | | Case: 1:20−mc−00056 |
| Movants, | MISC No. | Assigned To : Nichols, Carl J. |
| | | Assign. Date : 7/21/2020 |
| v. | | Description: MISC |
| The United States Department of Justice, | | |
| Respondents. | | |

_____/

## MOTION TO COMPEL

Pursuant to Fed. R. Civ. P. 31 and 45(b), movants Antonio M. Pozos, Esq. ("Mr. Pozos") and Drinker Biddle & Reath LLP ("Drinker Biddle") (collectively, "Movants") seek to enforce a non-party subpoena for deposition upon written questions that seeks information necessary to their defense of an action pending in the District of New Jersey, *JNL Management LLC and Jonathan Lasko v. Hackensack University Medical Center, Carrier Clinic Inc., Drinker Biddle & Reath LLP, and Antonio M. Pozos,* No. 2:18-CV-05221-ES-SCM (D.N.J.) (the "Underlying Action").  In support thereof, Movants state as follows:

### PRELIMINARY STATEMENT

Movants seek to enforce a subpoena they issued to the United States Department of Justice ("DOJ") on December 3, 2019 (the "Subpoena").  Indeed, over seven months transpired between service of the Subpoena and DOJ's recent response on July 16, 2020, which appears to have only

been prompted by the threat of a motion to compel.[1]  During this interim time, however, DOJ offered no clear explanation as to their extensive delay, nor whether they even intended to object to the Subpoena.  And now, after finally providing a response in the last week, DOJ does object to the majority of the requests in the Subpoena, and, in doing so, relies upon a series of flawed legal arguments to deny Movants potentially case-dispositive discovery.

In the Underlying Action, Plaintiffs Jonathan Lasko ("Mr. Lasko") and JNL Management, LLC ("JNL") (collectively, "Plaintiffs") allege that Mr. Pozos, a former DOJ trial attorney and current partner with Drinker Biddle, defamed Mr. Lasko during a February 2018 conference call with Mr. Pozos' own client.  According to Plaintiffs, Mr. Pozos made false statements concerning Mr. Lasko's past relationship with now-convicted felon Philip Esformes ("Esformes"), as well as Mr. Lasko's own criminality.  Specifically, Plaintiffs claim that Mr. Pozos falsely represented (1) Mr. Lasko was "'a person of interest' in connection with the prosecution of Philip Esformes and that the Department of Justice 'is not done with' Mr. Lasko," and (2) "Mr. Lasko is being investigated for possibly referring patients to facilities in which Mr. Esformes had or has an interest."  *See* Underlying Action Complaint ¶ 38, attached as **Exhibit 1**.

In reality, Mr. Pozos was not involved in Esformes' criminal investigation and prosecution, nor did he make the alleged statements.  Rather, at the request of his client, Mr. Pozos reviewed publicly available information about Mr. Lasko, and, based on this information, provided legal advice to his client concerning the potential risks of moving forward on a proposed joint venture with Mr. Lasko.  Such legal advice now, in retrospect, appears prophetic as Mr. Lasko was arrested

---

[1] In a recent conversation with DOJ attorneys, Movants explained that because of an upcoming discovery deadline in the Underlying Action, they had no choice but to move to compel DOJ to respond to the Subpoena.

in November 2019 in Florida for illegal patient brokering in connection with a drug detox facility he co-owned, in part, with Esformes.

   To refute Plaintiffs' claims, Movants issued a Subpoena for Deposition on Written Questions to DOJ, asking that it respond to seven clear, closed-ended questions and confirm (1) whether it was indeed investigating Lasko or JNL,[2] (2) the timing of any such investigations, and (3) whether Mr. Pozos personally participated in the investigation, indictment or ensuing prosecution of Esformes.  *See* Subpoena, attached as **Exhibit 2.**  DOJ is uniquely positioned in its ability to confirm the accuracy of these topics and the truth of Mr. Pozos' alleged defamatory statements (even under Plaintiffs' faulty version of events).

   Despite having the better part of a year to consider Movants' limited requests and also Movants' repeated efforts to confer, DOJ provided literally nothing.  Then, on July 16, 2020, DOJ finally issued a response letter (the "Response," attached **Exhibit 3**), asserting blanket objections to five of Movants' seven questions, and indicating that some sort of substantive response is forthcoming with respect to the remaining two questions (which Movants have yet to receive).

   The discovery sought from DOJ goes directly to the heart of the case, and any further delay in obtaining it will prejudice Movants' defenses in the Underlying Action.  Although Movants had hoped to resolve this issue without the Court's intervention, fact document discovery in the Underlying Action is scheduled to close on July 24, 2020.  Accordingly, and as set forth in more detail below, Movants respectfully request that the Court compel DOJ to promptly comply with

---

[2] JNL is a Florida limited liability company which is owned and operated solely by Mr. Lasko and his family members.

Requests Nos. 1, 2, 4 & 7 of the Subpoena by appearing for deposition and answering those four simple, closed-ended questions pursuant to Rule 31.[3]

## BACKGROUND AND PROCEDURAL HISTORY

### A.    The Underlying Action against Mr. Pozos and Drinker Biddle

In 2016, Plaintiffs and Hackensack University Medical Center ("HUMC") began negotiating a joint venture to establish a residential substance abuse and rehabilitation center in Mahwah, New Jersey (the "Facility").  *See* Complaint ¶¶ 1, 11, 14.  The Carrier Clinic ("Carrier") later joined this project with HUMC, and in mid-2017 Carrier hired Drinker Biddle as their own outside counsel on the proposed joint venture.  *Id.* ¶¶ 25–26.

As part of its due diligence, HUMC hired a company called Marathon Strategies to investigate Mr. Lasko.  This investigation resulted in a 201-page report in January 2018 (the "Marathon Report") that addressed, in part, the extent of Mr. Lasko's then known (based on publicly available information) personal and business ties to Esformes.  HUMC shared the Marathon Report with Carrier and Drinker Biddle, which prompted Carrier to ask Drinker Biddle to review the Marathon Report and, where appropriate, comment on it.  *See* Defendants' Answer & Affirmative Defenses ¶ 1, attached as **Exhibit 4.**  Mr. Pozos examined the Marathon Report and documents referenced therein, as well as other documents that he retrieved from publicly accessible sources, including transcripts, pleadings, and corporate records.  *Id.*  At Carrier's request, Mr. Pozos discussed his examination of the Marathon Report and related documents with representatives of Carrier and HUMC during a conference call on February 14, 2018.  *Id.*

On February 16, 2018, HUMC advised Mr. Lasko that HUMC was not going to proceed

---

[3] Based on DOJ's July 16, 2020 response and discovery that Movants have obtained in the interim, Movants withdraw Requests Nos. 3, 5, and 6.

4

with the joint venture.  *See* Complaint ¶ 38.  Plaintiffs assert that around this time, HUMC informed both the Plaintiffs' attorney for the transaction and Mr. Lasko that HUMC and Carrier had decided not to proceed with the proposed joint venture because Mr. Pozos allegedly told HUMC and Carrier the following:

- Mr. Lasko is a "person of interest" in connection with the prosecution of Philip Esformes and the Department of Justice "is not done with" Mr. Lasko;

- Mr. Esformes maintains a financial interest in JNL;

- Mr. Lasko had, or has, a business relationship with a "Mr. Delgado," a person involved in the Esformes matter; and

- Mr. Lasko is being investigated for possibly referring patients to facilities in which Mr. Esformes had or has an interest.

*Id.* ¶ 38.[4]  On April 3, 2018, Plaintiffs filed the Underlying Action against Movants, alleging that the four statements described above (i) defamed Mr. Lasko and (ii) portrayed him in a false light.[5]

*Id.* ¶ 50.  Plaintiffs seek over $14 million in damages from Movants based on these allegations.

**B.    The Court-Ordered Scope of Discovery & the Subpoena**

The permissible scope of discovery has been the subject of extensive litigation in the Underlying Action, due in large part to Plaintiffs' own allegations and then subsequent efforts to prevent Movants from uncovering information concerning Mr. Lasko's criminal conduct.  Because truth or substantial truth of the alleged statements is a complete defense to claims for defamation and false light, discovery concerning such conduct, or implication in prior criminal investigations

---

[4] Movants deny that the allegations in Plaintiffs' Complaint accurately reflect the advice given by Mr. Pozos to his client.

[5] The Complaint also included a claim for tortious interference with prospective economic advantage, but the United States District Court for the District of New Jersey dismissed that claim on a motion for judgment on the pleadings. *See* Underlying Action, D.E. 77.

(including, without limitation, the Esformes investigation), is critical for Movants to successfully defend against Plaintiffs' allegations.

Notwithstanding the obvious relevance of this discovery, throughout the Underlying Action Plaintiffs have continually obstructed Movants' efforts to obtain information concerning Mr. Lasko's prior involvement in the Esformes proceedings and other criminal investigations germane to the parties' dispute. For example, Mr. Lasko never disclosed that he was under criminal investigation by the State of Florida in as early as December 2017 for patient brokering at a facility he co-owned with Esformes[6]; Movants discovered this fact on their own after Mr. Lasko was arrested by state law enforcement in Florida November of 2019. When questioned about his status in both the federal Esformes investigation and the State of Florida's investigation during separate depositions in this case, Mr. Lasko essentially disclaimed any knowledge on the topics and deferred to his former criminal defense counsel. *See, e.g.*, Lasko Tr. Vol. 1, 270:2-8; 274:12-24; 300:15-307:14; Lasko Tr. Vol II, 58:9-13; 139:10-14; 144:4-9, excerpts attached as **Exhibit 5.** And when Movants then attempted to subpoena this information directly from Mr. Lasko's prior criminal defense counsel, Mr. Lasko instructed them not to disclose pertinent communications directly to Movants, and instead directed the subpoena recipients to funnel all responsive documents through Lasko's civil counsel in the Underlying Action. *See, e.g.*, July 13, 2020 Response from Bruce Reinhart P.A., attached as **Exhibit 6.** Finally, when Movants recently requested a second time that Mr. Lasko sign a release permitting DOJ to disclose pertinent information, he once again declined to do so unless (1) the release was substantially narrowed in scope and (2) his counsel would have the opportunity to review and cull documents from DOJ's

---

[6] This fact applies to both discovery in the Underlying Action and Mr. Lasko's disclosures during the prior diligence period with HUMC and Carrier.

production prior to disclosing any documents to Movants[7].   *See,* July 17, 2020 Email
Correspondence from K. Rubinstein to O. Curtis and July 18, 2019 Email Correspondence from
K. Rubinstein to T. Wishert, attached as **Exhibit 7.**

      Despite Plaintiffs' improper efforts, the court in the Underlying Action recently entered an
order expressly permitting Movants to pursue discovery regarding Plaintiffs' communications with
state, federal or local law enforcement, reasoning that such communications are relevant to show
the timing and nature of *any* governmental investigations into Mr. Lasko's past criminal conduct.
*See* Order re Discovery Dispute and referenced joint letter, attached as **Exhibit 8**.   And the
discovery requested from DOJ here is relevant for the same reasons.   Subpoena Requests 1 and 2
ask DOJ to confirm whether its Criminal Fraud Section (1) ever investigated Mr. Lasko, and (2)
was investigating Mr. Lasko in February of 2018 (i.e., at the time the alleged defamatory
statements were made).

### C.     DOJ's Response and Objections

      Movants served the Subpoena on DOJ on December 3, 2019 with the cover correspondence
attached as **Exhibit 9.**[8]  As they did, Movants made clear they were willing to confer with DOJ to
the extent DOJ had objections to answering any of the questions as phrased. *Id.*  Counsel for DOJ[9]
thereafter indicated several times over the next seven months that a response to the Subpoena
would be forthcoming. *See, e.g.*, January 7, 2020 Email from D. Simunovich to O. Curtis, attached

---

[7] Movants find this request curious.  If, as alleged, Mr. Pozos' statements are untrue and Mr. Lasko
was never under federal criminal investigation, there should be nothing to fear or cull.  Regardless,
the parties are already subject to a confidentiality order that would afford Plaintiffs the right to
designate materials as confidential or attorneys' eyes only.

[8] As noted therein, Movants tailored their requests to comply with 28 C.F.R. § 16.21-26 (the
"*Touhy* regulations") in hopes of expediting DOJ's response.

[9] Although the Subpoena was issued and is returnable in the District of Columbia, Movants'
communications with DOJ regarding the Subpoena have been with two civil Assistant United
States Attorneys in the District of New Jersey.

as **Exhibit 10;** March 4, 2020 Email from D. Simunovich to O. Curtis, attached as **Exhibit 11**; June 24, 2020 Email Correspondence from D. Simunovich to O. Curtis, attached as **Exhibit 12.** DOJ did not, however, respond until July 16, 2020, and only after Movants advised that, given the discovery deadlines in the Underlying Action, they would be moving forward with a motion to compel.

DOJ advised for the first time in its Response that it would be objecting to five of Movants' seven requests on the basis of the Privacy Act, the law enforcement privilege, or both. *See* Response. DOJ also objected, without explanation or support, to disclosing the requested information via deposition by written questions as "unduly burdensome," subjectively concluding that "a sworn affidavit will suffice." *Id.*

For the reasons set forth below, the Court should overrule DOJ's objections with respect to Requests 1 & 2, and compel DOJ to answer questions 1, 2, 4, and 7 in accordance with Federal Rules of Civil Procedure 31 and 45(b).

## LEGAL STANDARD

A party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . [or which] appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Rule 45 supplies the standards under which district courts assess government agency objections to a subpoena. *Watts v. Sec. & Exchange Comm'n*, 482 F.3d 501, 508 (D.C. Cir. 2007) (explaining that Rule 45 applies to subpoenas to third-party government agencies and an agency's refusal to comply with a subpoena should be addressed through a Rule 45 motion to compel). Limiting discovery pursuant to Rule 45 "goes against courts' general preference for a broad scope of discovery." *United States Dep't of the Treasury v. Pension Benefit Guaranty Corp.*, 31 F.R.D. 20, 25 (D.D.C. 2014). "Moreover, the general policy favoring

broad discovery is particularly applicable where, as here, the court making the relevance determination has jurisdiction only over the discovery dispute, and hence has less familiarity with the intricacies of the governing substantive law than does the court overseeing the underlying litigation." *Id.* (quoting *Jewish War Veterans of the United States of Am., Inc. v. Gates*, 506 F.Supp.2d 30, 42 (D.D.C. 2007)).

## ARGUMENT

### A.     The Subpoena Seeks Relevant and Case-Dispositive Discovery

There can be no dispute that the information sought through the Subpoena is relevant to Movants' defenses in the Underlying Action.   Under applicable New Jersey law, truth or substantial truth of an alleged statement is a complete defense to a claim for defamation or false light. *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 425 (D.N.J. 2005); *see also Ward v. Zelikovsky*, 136 N.J. 516, 528 (1994).  Accordingly, in responding to a defamation action, defendants are entitled to discovery of information relevant to prove the substantial truth of the alleged defamatory statements.

In the Underlying Action, the court ruled that the alleged statements could be defamatory if they "impute criminality" to Mr. Lasko (and, by extension, to JNL).  *See* Underlying Action, D.E. 76.  Thus, if Mr. Lasko was under criminal investigation by DOJ, in connection with the Esformes investigation or otherwise, then Mr. Pozos' alleged statements were, at a minimum, substantially true, and Plaintiffs' claims for defamation and false light would fail.  *See G.D. v. Kenny*, 205 N.J. 275, 292-94 (2011) ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified,"  "consider[ing] a statement as a whole to determine the impression it will make on a reader.").  As noted above, DOJ is uniquely positioned to conclusively establish whether Mr. Lasko was indeed under criminal investigation,

and Movants' Requests 1 & 2 are narrowly tailored to obtain this information.  Movants have thus satisfied the relevancy requirements of Rule 26(b).

### B.      The Court Should Overrule DOJ's Objections to Request Nos. 1 and 2

DOJ argues that both the Privacy Act and the law enforcement privilege bar it from disclosing information about Mr. Lasko.  However, for the reasons set forth below, neither the Privacy Act nor the law enforcement privilege exempts the requested information from disclosure.  Accordingly, the Court should compel DOJ to comply with the Subpoena and immediately provide Movants with the requested discovery.

### 1.      The Privacy Act Does Not Prevent Discovery of the Requested Information

The Privacy Act restricts government agencies from disclosing information about specific individuals unless certain criteria are satisfied.  *See* 5 U.S.C. § 552a.  However, pursuant to section 552a(b)(11), government agencies can disclose information otherwise subject to the Privacy Act pursuant to a court order.  *See Laxalt v. McLatchy*, 809 F.2d 885, 880 (D.C. Cir. 1987) ("the plain language of the statute permits disclosure pursuant to the order of a court of competent jurisdiction").  In determining whether to issue such orders, courts apply "the usual standards of the FRCP—in particular, Rules 26 and 45(b)."  *Id.*  Indeed, courts within this Circuit have consistently rejected the argument that the Privacy Act "create[s] a qualified discovery privilege."  *See id.*; *see also Pleasants v. Albaugh*, 208 F.R.D. 7, 12 (D.D.C. 2002); *Lohrenz v. Donnelly*, 187 F.R.D. 1, 8 (D.D.C. 1999).  Rather, "a party can invoke discovery of materials protected by the Privacy Act through the normal discovery process and according to the usual discovery standards, and the test of discoverability is the relevance standard of Rule 26(b)(1) of the FRCP."  *McLatchy*, 809 F.2d at 889.

Request No. 1 asks DOJ whether its Criminal Fraud Section has ever investigated Mr. Lasko, and Request No. 2 asks whether the Criminal Fraud Section was investigating Mr. Lasko in February of 2018.  As set forth above, both the Requests seek information that, if confirmed by DOJ, would establish that Mr. Pozos' alleged statements were substantially true and thus, not actionable.

Ironically, Mr. Lasko's former criminal counsel, Bruce Reinhart[10], requested this very same information from DOJ at the outset of this litigation.  *See* March 7, 2018 Correspondence from Bruce Reinhart to DOJ (JNL002540-2542), attached as __**Exhibit 13.**__  Specifically, Mr. Reinhart requested that DOJ "issue us a letter clarifying the status of *any investigation* of Mr. Lasko" so that Mr. Lasko could "attempt to mitigate the damage" he is seeking to recover in the Underlying Action. *Id.* at JNL002541 (emphasis added).

Clearly, the requested discovery is highly relevant.  And if this were not the case, Mr. Lasko himself, through prior criminal counsel, would not have requested it directly from DOJ.  Nor should the Court afford any deference to any arguments that Mr. Lasko now makes regarding his own privacy interests, as his change of position is a nakedly self-serving attempt to forestall discovery that he should welcome if his case had any merit (which it does not). Accordingly, Movants' requests satisfy the relevancy requirements of Rule 26(b)[11], and the Privacy Act cannot shield the requested information from disclosure.  The Court should therefore overrule DOJ's objections based on the Privacy Act and enter an order compelling DOJ to respond to Requests Nos. 1 and 2.

---

[10] Mr. Reinhart now serves as a Federal Magistrate Judge in the Southern District of Florida.

[11] DOJ appears to concede that both Requests 1 and 2 seek relevant information, as it does not object to either Request on this basis. *See* Response, section C.

2.      **Movants' Demonstrable Need for the Requested Discovery is Sufficient to Overcome the Law Enforcement Privilege**

"The law enforcement privilege aims to protect the integrity of law enforcement techniques, sources, and investigations—disclosure of which would be contrary to the public interest in the effective functioning of law enforcement." *Buzzfeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 361 (D.D.C. 2018).  It is a qualified privilege, and requires that the public interest in non-disclosure be balanced against the need of a particular litigant for access to the privileged information. *See In re Sealed Case*, 856 F.2d 268, 319 (D.C. Cir. 1988).  Indeed, "[t]he process of identifying and weighing the competing interests cannot be avoided." *Id.*

To successfully invoke the privilege, the government must satisfy three procedural requirements: (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege. *Buzzfeed*, 318 F. Supp. 3d at 361.  "The government may not, however, be conclusory or vague in stating how the release of the information would interfere with the prospective law enforcement proceeding." *Scheer v. Dep't of Justice*, 35 F. Supp. 2d 9, 13 (D.D.C. 1999) (holding that the government failed to establish that disclosure pursuant to FOIA request would have interfered with a law enforcement proceeding).

Once the privilege is properly invoked, courts then apply a multi-factor balancing test to determine whether the public interest in nondisclosure outweighs the particular litigant's need to access the privileged information. *Id.*  These factors include: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities

12

disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the claims or defenses are nonfrivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the underlying case. *Id.*, *see also In re Sealed Case*, 856 F.2d at 319.

Here, it is unclear whether DOJ has properly invoked the privilege because its Response does not (1) specify whether the assertion of the privilege was based on actual personal consideration by the official having control over the requested information, or (2) properly explain why the information sought in Request No. 2 falls within the scope of the privilege. As explained in DOJ's Response, the law enforcement privilege is intended to protect information in DOJ's "investigatory files." *See* Response, section B. However, Request No. 2 does not ask that DOJ disclose its investigatory files or any information contained therein; Movants ask only that DOJ confirm whether Mr. Lasko was under investigation, of any nature, in February of 2018.[12] DOJ also claims that "disclosing whether the Fraud Section had an open investigation at a specific point in time could reveal information about the nature and progress of any such investigation." *See id.* Yet DOJ does not explain how confirming the mere existence of an investigation at a specific point in time (over 2 ½ years ago) would reveal any meaningful information about the nature or progress

---

[12] Each of the authorities cited in DOJ's Response is distinguishable on this basis; in those matters, the litigant sought the government agency's actual files or testimony concerning their contents. Here, Movants seek neither.

of such an investigation.   DOJ's conclusory assertion of privilege is equally arbitrary and insufficient.  *Scheer*, 35 F. Supp. 2d at 13; *Buzzfeed*, 318 F. Supp. 3d at 361.

Even assuming DOJ has properly invoked the law enforcement privilege, each of the factors listed above weighs in favor of disclosure.  There is no indication that disclosure of the factual information Movants seek here will "discourage citizens from giving the government information," chill the government's "self-evaluation and consequent program improvement," or implicate "interdepartmental disciplinary proceedings." Movants do not seek any "evaluative summaries" by DOJ, nor do they ask DOJ to disclose the identities of any persons not already known to Movants.  Indeed, Mr. Lasko has already been linked to the Esformes investigation in public records, and it is Mr. Lasko's own decision to bring the Underlying Action that has placed his past involvement with DOJ at issue (and in the public eye).  And again, this does not even touch upon the fact that Mr. Lasko himself has requested this very same information from DOJ in the past.  Finally, there is no suggestion that Movants are "actual or potential defendant[s] in any criminal proceeding either pending or reasonably likely to follow from the incident in question." Each of these factors, both taken alone and in the aggregate, suggest that any interest the public may have in nondisclosure is limited at best.

In contrast, Movants have demonstrated the discovery requested in the Subpoena is of paramount importance to their defense of the Underlying Action, and that DOJ is uniquely positioned to provide this discovery.  Indeed, it is undisputed that truth is an absolute defense to both defamation and false light claims, and DOJ is the primary and most reliable source of information concerning its own investigations.  Further, as discussed above, Plaintiffs have obstructed Movants' efforts to date to obtain circumstantial evidence concerning the truth of the alleged statements from other secondary sources.  Additionally, the significant amount of damages

14

Plaintiffs seek in the Underlying Action, coupled with the seriousness of the allegations Plaintiffs have leveled against Mr. Pozos, underscore Movants' legitimate and compelling interest in obtaining the requested discovery. *See Buzzfeed*, 318 F. Supp. 3d at 361 (finding that the significant amount in controversy in the underlying defamation action "favors compelling disclosure").

Notably, this Court has compelled disclosure of information concerning DOJ criminal investigations under similar circumstances. For example, in *Buzzfeed*, Movants sought to compel DOJ to answer three questions in order to determine whether DOJ possessed certain dossiers and whether those dossiers were the subject of a government investigation at a specific point in time. 318 F. Supp. 3d at 352, 355. Movants argued that this information was critical to its fair reporting defense in the underlying defamation action. *Id.* at 352. The Court agreed, finding that "[t]he testimony that BuzzFeed seeks is essential to its defense against the defamation action and it cannot be obtained from any other source," and held that Buzzfeed "made a sufficient showing of need to overcome the law enforcement privilege." *Id.*

In sum, Movants' interest in confirming whether Mr. Lasko and JNL were under criminal investigation by DOJ, when Plaintiffs themselves have placed this precise fact at issue in the very lawsuit they have brought against Movants, outweighs any negligible interest the public may have in nondisclosure. The Court thus should not permit DOJ to withhold the requested discovery on this basis.

### C.      The Court Should Compel DOJ's Deposition by Written Questions

To the extent DOJ has agreed to disclose any information responsive to Movants' requests, it has agreed to do so only by affidavit, arguing that "[r]equiring a DOJ employee to sit for a deposition by written questions to answer Question Nos. 4 and 7 would be unduly burdensome because a sworn affidavit will suffice." *See* Response, section C. DOJ is incorrect on both counts.

First, DOJ does not explain how or why it would be "unduly burdensome" for one of its employees to answer four questions that call for nothing more than a "yes" or "no" answer. Indeed, the entire process, in which a certified court reporter will simply read aloud the four questions and record DOJ's presumably sworn, one-word answers to the same, should take no more than 10 minutes at most. Movants are certainly willing to accommodate DOJ in terms of a preferred date and location (including requests that the deposition take place remotely), provided that they receive the requested discovery within the next week.

Second, although Movants appreciate DOJ's offer to provide the same information via affidavit, Movants must ensure that they obtain the requested information in a form that would be admissible at a future trial – a fact Movants have brought to the attention of DOJ. While DOJ's deposition testimony would be admissible pursuant to Federal Rule of Evidence 804(b)(1), an affidavit would not be. Accordingly, Movants request that the Court order DOJ to provide the subject information by appearing for deposition by written questions, with the deposition to be scheduled at a time and place convenient for the appointed witness within the next seven days.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court grant the Motion to Compel and require Respondent to comply with the Subpoena by providing answers to Requests 1, 2, 4 and 7 in the form of a deposition by written questions within seven days.

## LOCAL RULE 7(m) CERTIFICATION

Movants hereby certify that they attempted to confer with DOJ via email prior to filing the instant motion in order to determine whether there was any opposition to the relief sought and to narrow the areas of disagreement. DOJ opposes the motion.

Dated: July 21, 2020                              Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

By*:  /s/  Jennifer B. Routh* _____

    Jennifer B. Routh, D.C. Bar. No. 1032060
    *jrouth@mwe.com*
    500 North Capital Street, NW
    Washington, D.C. 20001-1531
    (202) 756-8165

    Oliver Benton Curtis, III (*pro hac vice* motion
    forthcoming)
    *bcurtis@mwe.com*
    Asra A. Chatham (*pro hac vice* motion
    forthcoming)
    *achatham@mwe.com*
    333 SE 2nd Avenue, Suite 4500
    Miami, FL 33131-2184
    (305) 329-4442

    *Attorneys for Movants Antonio M. Pozos and Drinker*
    *Biddle & Reath*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 21, 2020, I served a copy of the foregoing by certified U.S.

mail and electronic mail on the following:

David V. Simunovich
*David.simunovich@usdoj.gov*
Jessica O'Neill
*Jessica.Oneill@usdoj.gov*
U.S. Attorney's Office
District of New Jersey
970 Broad Street
Newark, NJ 07102

Daniel Van Horn
*Daniel.vanhorn@usdoj.gov*
U.S. Attorney's Office
District of Columbia
555 4th Street NW
Washington, D.C. 20001


*Counsel for Respondent,*
*the United States Department of Justice*


/s/ *Jennifer B. Routh*
Jennifer B. Routh